# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT R. CARTER, | CV F 03 5436 AWI LJO HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| ED ALAMEIDA, JR., Director, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Due to the death of Magistrate Judge Hollis G. Best and the appointment of Magistrate Judge William M. Wunderlich, by order dated May 2, 2004, this case was reassigned to the undersigned for all further proceedings.

**PROCEDURAL HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on December 2, 1997, of conspiracy to sell marijuana in violation of Cal. Penal Code

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer to the petition, and Petitioner's traverse to Respondent's answer.

§ 182(a)(1) and Cal. Health & Safety Code § 11360. See Exhibit A, Answer to Petition for Writ of Habeas Corpus (hereinafter "Answer"). In a bifurcated proceeding, the trial court found true the allegations that Petitioner had suffered two prior serious felony convictions within the meaning of California's Three Strikes law. See Exhibit D, Answer. In addition, the trial court found true an enhancement for a prior narcotics conviction and six enhancements for six prior prison terms within the meaning of Cal. Penal Code § 667.5(b) and Cal. Health & Safety Code § 11370.2. Id. Petitioner was sentenced to an indeterminate term of 25 years to life plus nine years. Id.

Thereafter, Petitioner filed a notice of appeal with the California Court of Appeal, Fifth Appellate District (hereinafter "5th DCA"). On June 1, 1999, the 5th DCA issued an unpublished opinion affirming the judgment. Id. Petitioner did not file a petition for review in the California Supreme Court.

On May 11, 2000, Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court. See Exhibit E, Answer. On May 31, 2000, the petition was denied. See Exhibit F, Answer.

On August 8, 2000, Petitioner filed a petition for writ of habeas corpus in the 5th DCA. See Exhibit G, Answer. On December 4, 2000, the petition was summarily denied. See Exhibit H, Answer.

On January 11, 2001, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. See Exhibit I, Answer. On April 25, 2001, the petition was summarily denied. See Exhibit J, Answer.

On February 15, 2002, Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court. See Exhibit K, Answer. On March 5, 2002, the petition was denied. Id.

On May 20, 2002, Petitioner filed a petition for writ of habeas corpus in the 5th DCA. See Exhibit L, Answer. On May 30, 2002, the petition was denied. See Exhibit M, Answer.

On July 19, 2002, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. See Exhibit N, Answer. On January 29, 2003, the petition was denied. See Exhibit O, Answer.

On March 31, 2003, Petitioner filed the instant federal habeas petition in this Court.

Petitioner raises one ground for relief, with three sub-parts. He claims he was denied the effective assistance of counsel for counsel's failure to call Petitioner and another witness to testify at his motion to suppress evidence, for counsel's failure to hire a voice recognition expert to dispute the investigating officer's conclusion that Petitioner was the individual heard on an audiotape, and for counsel's waiver of Petitioner's right to be present at all jury requests for read-back of testimony and additional instructions.

On August 22, 2003, Respondent filed an answer to the petition.

On October 14, 2003, Petitioner filed a traverse.

## FACTUAL BACKGROUND

The Court hereby adopts the facts as summarized by the 5th DCA in its opinion dated June 1, 1999:

> During the summer of 1997, the Kern County Sheriff's Department and the FBI began investigating suspected narcotics trafficking at 1130 East Third Street in Bakersfield. Special Agent Mark Abe of the FBI monitored wiretaps which were placed on telephones at 1130 East Third Street. Abe listened to hundreds of conversations and began to recognize and identify the voices of the callers.
>
> Abe was an experienced FBI agent.[2] Abe had learned street language and code words as well as detection avoidance techniques used by drug traffickers in Bakersfield. [Petitioner] went by the nickname Wookie. During a conversation with codefendant Gerald Hodges (nicknamed Noogie) on July 11, 1997, [Petitioner] said "tell 'em my weed, tell 'em my weed is low." Abe testified that by this comment [Petitioner] was indicating that the last delivery of marijuana he received from Noogie was less than what he ordered or that the quality of the marijuana was poor.
>
> During the same conversation, [Petitioner] said, "Well, let me get my . . . pager" and "let me get my nine." Abe explained that the number nine is a common term used in drug dealing to indicate nine ounces, or a quarter of a kilo. On July 13, Abe heard conversations between Gerald Hodges, Danny Richards, and Lyle Brown, indicating that Brown was running a shift selling drugs at the East Third Street address. On July 14, Abe heard Brown negotiating a sale and instructing him to come to the East Third Street address and meet him in front of the house.
>
> On July 17, 1997, investigators intercepted a telephone call from Hodges to Richard in which the two men discussed [Petitioner]. Richard told Hodges he needed more money. Richard then told Hodges that Hodges needed to put up more money "because this shit with Wookie [Petitioner] ain't comin' through at all." Richard said he was still out $1,900, that he was going to get his money, that [Petitioner] had money tied up, and that Richard had not

---

[2] Abe had been an FBI agent for nine years. He had been trained in narcotics enforcement at the FBI academy and in an FBI advanced drug training program. Abe had participated in five wiretapping investigations involving narcotics trafficking in Bakersfield. He had assisted in numerous other investigations involving distribution of drugs at the street level which resulted in numerous arrests.

seen any of his money. Abe testified that his interpretation of the conversation was that [Petitioner] owed Richard in drug proceeds from a previous transaction and had failed to pay Richard.

On July 18, 1997, Hodges told Richard he (Hodges) should go to Joe's place and get that stash. Abe testified that Hodges was suggesting he should go to Joe Crompton's house and pick up drugs or money.

On July 22, 1997, investigators raided Joe Crompton's residence on Potomac Street and found six pounds of marijuana, a small amount of cocaine, a scale and drug packaging supplies. The investigator testified he believed that the marijuana was not for personal use but for sale. That same day, Richard called from 1130 East Third Street and asked a woman named Linda if "Wookie made it in?" Linda replied [Petitioner] had left. Richard told Linda to tell [Petitioner] it was important that Richard "get with him, because, a, they a, they hit the house over there." Richard instructed Linda to tell [Petitioner] that Richard needed "a change" and that he needed "that fourteen."

On August 26, 1997, [Petitioner] called from 1130 East Third Street, to a man named Bob. [Petitioner] identified himself to Bob as Wook. [Petitioner] used the term "three" and instructed Bob to walk down the street. Abe testified he recognized the man who identified himself as "Wook" to be [Petitioner] from the tone, pitch, and style of his voice. After [Petitioner] was arrested he identified himself as Wookie. According to Abe, [Petitioner] used the word three to place an order for some kind of drug. Ave was unsure which drug or whether three referred to three ounces, three grams, three milligrams, three pounds, or three kilos.

When [Petitioner] was arrested, he was driving a 1979 Toyota. Deputy William Wahl of the Kern County Sheriff's Department and Special Agent Michael Mahoney of the FBI found a triple-beam scale inside a cloth bag in the trunk. The scale was the type of scale commonly used by drug dealers to weigh out consistent portions of marijuana. There was a green leafy residue on the scale that the investigator recognized as marijuana from its appearance and odor. When asked about the scale, [Petitioner] said it belonged to "Anthony." [Petitioner] did not know Anthony's last name or address. [Petitioner] was carrying $110 made up entirely of $5 and $10 bills. [Petitioner] told the investigator that the car belonged to his niece. Later, [Petitioner] said the car belonged to his niece's boyfriend.

[Petitioner] admitted he knew Danny Richard, and his family, who lived at 1130 East Third Street. [Petitioner] denied ever seeing drug sales or drug use while at the residence. [Petitioner] admitted he smoked marijuana which he called "weed." Agent Mahoney testified that weed was a common street term for marijuana.

See pp. 2-5, Exhibit D, Answer.

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

1  Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court,
2  which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly,
3  the Court has jurisdiction over the action.

4  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of
5  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.
6  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114
7  F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert.*
8  *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)
9  (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was
10 filed after the enactment of the AEDPA; thus, it is governed by its provisions.

11 **II.  Legal Standard of Review**

12 This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody
13 pursuant to the judgment of a State court only on the ground that he is in custody in violation of the
14 Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

15 The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death
16 Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70
17 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the
18 adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable
19 application of, clearly established Federal law, as determined by the Supreme Court of the United
20 States" or "resulted in a decision that was based on an unreasonable determination of the facts in
21 light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,
22 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

23 As a threshold matter, this Court must "first decide what constitutes 'clearly established
24 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
25 *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court
26 must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time
27 of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly
28 established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

the Supreme Court at the time the state court renders its decision." <u>Id</u>.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id</u>. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claim**

In his sole ground for relief, Petitioner claims he was denied the effective assistance of counsel in three instances. First, Petitioner claims defense counsel failed to call him and another

individual to testify at the hearing on the motion to suppress evidence. Second, he claims defense counsel failed to hire a voice recognition expert to rebut the testimony of the investigating officer that Petitioner was the individual heard on an audiotape discussing drug trafficking. Third, he claims defense counsel erroneously waived Petitioner's right to be present at all jury requests for read-back of testimony and requests for additional instructions.

### A.  Standard of Review - Ineffective Assistance of Counsel

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688.  The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).  To set aside a conviction or sentence solely because the outcome would have been different, but for counsel's error, may grant the petitioner a windfall to which the law does not entitle him. Lockhart v. Fretwell, 506 U.S. 364, 369-70, 113 S.Ct. 838, 842 (1993).

A court need not determine whether counsel's performance was deficient before examining

the prejudice suffered by the petitioner as a result of the alleged deficiencies. <u>Strickland</u>, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). <u>Weighall v. Middle</u>, 215 F.3d 1058, 1062 (2000). With this standard in mind, the Court now turns to each of Petitioner's claims of ineffective assistance of counsel.

### B. Failure to Call Witnesses

Petitioner first claims defense counsel failed to call Petitioner and the passenger of the vehicle Petitioner was driving to testify as witnesses at the hearing on the motion to suppress evidence. Petitioner contends that he and the passenger would have testified that Petitioner did not give the investigating officer permission to search the trunk of the vehicle where a triple-beam scale was found, that Petitioner only gave the officer permission to search the inside of the vehicle. In support of his claim, Petitioner submits affidavits from himself and Emmanuel Foreman, the passenger of the vehicle.

In presenting a claim of ineffective assistance based on counsel's failure to call witnesses, Petitioner must identify the witness, <u>U.S. v. Murray</u>, 751 F.2d 1528, 1535 (9th Cir. 1985), show that the witness was willing to testify, <u>U.S. v. Harden</u>, 846 F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient to create a reasonable doubt as to guilt. <u>Tinsley v. Borg</u>, 895 F.2d 520, 532 (9th Cir. 1990); <u>see</u> <u>also</u> <u>United States v. Berry</u>, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not indicate what witness would have testified to and how such testimony would have changed the outcome of the trial, there can be no ineffective assistance of counsel).

This claim was first presented in a petition for writ of habeas corpus to the Kern County Superior Court on February 4, 2002. <u>See</u> Exhibit K, Answer. The claim was rejected in a reasoned opinion dated March 5, 2002. <u>Id</u>. In rejecting the claim, the Superior Court stated:

> Petitioner has failed to submit any facts and/or documentary evidence that Counsel contacted the passenger of the car, that the passenger would have testified that Petitioner did not give permission to search the car, that the Court would have believed the passenger over

the Police Officer and the Court would have then suppressed the scale and dismissed the case. Petitioner is obligated to state with particularity the facts on which relief is sought and to attach reasonably available documentary evidence that support[s] his claim. [Citation omitted.] Petitioner merely states, without providing any supporting facts or documentary evidence, that had counsel investigated the passenger and had him testify that Petitioner did not give him permission for the search that the [court] would have believed the passenger and dismissed the case. That is an unsupported conclusory allegation that is insufficient to support the relief granted. [Citation omitted.]

Petitioner submitted the same claim to the 5th DCA and the California Supreme Court in petitions for writ of habeas corpus; however, those petitions were denied without comment. See Exhibits M and O, Answer.

The Court has reviewed the claim and finds it to be without merit, because Petitioner fails to establish that counsel's failure to call the witnesses to testify was error and that this failure prejudiced Petitioner.

Prior to the hearing on the motion to suppress, defense counsel filed a written motion pursuant to California Penal Code § 1538.5 to suppress the scale found in the trunk as the product of an unlawful search and seizure in violation of the Fourth Amendment. (CT 256-265.)[3] The motion relied on the following factual summary which was taken from Kern County Sheriff's Report #KC97-14572 dated July 15, 1997, authored by investigating officer M. Willis:

> On July 15, 1997 at approximately 12:42 in the afternoon, Kern County Sheriff's Deputy M. WILLIS, observed the 1979 white Toyota Corolla being driven by Defendant, ROBERT CARTER, to make rolling stops through two (2) intersections controlled by stop signs. Defendant also changed lanes without signalling [sic]. DEP. WILLIS made an enforcement [stop] of the Toyota.
>
> DEP. WILLIS told Defendant, CARTER, why he had been stopped and asked Defendant for driver's license and registration. Defendant pressented [sic] his driver's license but could not located [sic] the registration, explaining that the car belonged to someone else. DEP. WILLIS asked Defendant if there were any weapons or narcotics in the car, and Defendant said, "No. You can check." DEP. WILLIS had Defendant get out of the car and did a "cursory search of his person for weapons and officer safety." DEP. WILLIS found no drugs. Defendant did have $110.00 in cash. Defendant did tell DEP. WILLIS that he was on parole for drugs.
>
> DEP. WILLIS had the passenger, MR. FOREMAN, step out of the car, and DEP. WILLIS searched him for weapons and officer safety. FOREMAN told DEP. WILLIS that he was not on parole or probation, but had in the past been arrested.
>
> DEP. WILLIS searched the interior of the car for weapons and drugs and found neither. DEP. WILLIS opened the trunk to seach [sic] it. He found a green cloth bag

---

[3] "CT" designates the Clerk's Transcript on Appeal lodged with the Court on August 22, 2003.

containing a large, triple beam scale. DEP. WILLIS also found a pan for the scale. On the pan was marijuana residue. Defendant, CARTER, told DEP. WILLIS that the scale did not belong to him but belonged to someone named ANTHONY. DEP. WILLIS seized the scale and gave Defendant a verbal warning regarding the traffic violations.

(CT 257.)

Counsel claimed the search was outside the scope of a routine traffic stop. Counsel further claimed the detention of Petitioner in order to conduct the search was excessively prolonged. The People responded that the search was not unnecessarily long and was not unreasonable given that the defendant had consented to a search of his vehicle. At the hearing, Deputy Willis was called to testify to the search and seizure. (1RT 5.)[4] Deputy Willis testified consistent with his report, as set forth above. (1RT 5-14.) Defense counsel then cross-examined the officer regarding the necessity of the searches he performed. Deputy Willis testified that his questions regarding narcotics and weapons and his pat-down search of the defendant were for his own personal safety. (1RT 17.) Defense counsel then argued that the search was impermissibly prolonged and expanded beyond the scope reasonably necessary for a traffic citation. (1RT 22-30.) The Court denied the motion finding the detention was not unnecessarily prolonged or expanded, because the officer's questions took very little time and a substantial amount of time was spent by the defendant looking for his registration. (1RT 31.)

Petitioner insists that he did not give consent to the search of the vehicle's trunk, that he consented only to a search of the interior of the vehicle. See Exhibit A, Petition. He states he objected to the officer's search of the trunk, because the car did not belong to him but to Anthony Robinson. Id. He states he told defense counsel he, the passenger, and Mr. Robinson would testify at the suppression hearing, but counsel did not call them. Id.

Counsel's actions can reasonably be considered sound trial strategy. Assuming Petitioner made these facts known to counsel, counsel wisely chose not to engage in a credibility contest, which Petitioner would surely have lost. Deputy Willis's testimony was consistent with his report and was tested on cross-examination. He had no motive to lie. Petitioner, on the other hand, was a parolee

---

[4] "1RT" refers to the Reporter's Transcript on Appeal dated November 10, 1997, lodged in this action on August 22, 2003.

with eleven prior felony convictions. See Exhibit P, Answer. His statements, as well as the passenger's, are also very self-serving. Petitioner contends he refused to consent to a search of the trunk because the car was not his and he did not know what was in the trunk. However, as Respondent points out, for the same reason Petitioner claims he did not know what was in the trunk, he would also not know what items may have been in the interior of the car under the seats, in the glove compartment, or under the floor mats. In addition, while he submits that the owner of the vehicle, Anthony Robinson, would testify that the scale was his, he submits no affidavit from Mr. Robinson. The absence of any affidavit from Mr. Robinson puts Petitioner's claim at a serious disadvantage. Howard v. O'Sullivan, 185 F.3d 721, 724 (7th Cir. 1999) ("failure to submit supporting affidavits from [the] potential witnesses would severely hobble [the petitioner's] case.") It is apparent that counsel made a wise decision to attack the search and seizure in the manner he did rather than engage in a credibility contest which Petitioner would surely have lost. See United States v. Mayo, 646 F.2d 369, 375 (9th Cir.), *cert. denied sub. nom.*, Dondich v. United States, 454 U.S. 1127 (1981) (difference in opinion as to trial tactics does not constitute denial of effective assistance); Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir.), *cert. denied,* 469 U.S. 838 (1984) (tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available.)

     In addition, Petitioner cannot demonstrate prejudice resulting from defense counsel's alleged error. The only item seized from the search and seizure was a scale with marijuana residue. This item of evidence was minute compared to the rest of the evidence implicating Petitioner in the conspiracy. Petitioner associated with the people at 1130 East Third Street, the central location of the conspiracy, and made telephone calls to and from the residence. See p. 7-9, Exhibit B, Answer; see p. 4, Exhibit D, Answer. In a conversation on July 11, 1997, Petitioner was heard telling codefendant Hodges "tell 'em my weed, tell 'em my weed is low." See p. 3, Exhibit D, Answer. According to the FBI expert, this statement meant that the last delivery of marijuana was of less quality or quantity than what was ordered. Id. In the same conversation, Petitioner also stated "let me get nine." Id. The FBI expert testified that this statement indicated Petitioner was seeking a quarter of a kilo of drugs. Id. In another conversation between Hodges and Richards, the two men discussed a previous transaction

involving Petitioner in which Petitioner had failed to pay Richards for the drugs he had received. Id. In a conversation on August 26, 1997, Petitioner contacted a man named Bob and placed an order for "three" which designated an unknown amount of drugs. Id. at 4.

In light of all the evidence implicating Petitioner in the conspiracy, it is clear that exclusion of the scale found in the trunk of the vehicle Petitioner was driving would not have altered the outcome of this case. Petitioner has not shown counsel's actions to be erroneous, and he has not demonstrated prejudice resulting therefrom. The claim should be rejected.

### C. Failure to Hire Expert

In his second claim of ineffective assistance of counsel, Petitioner faults defense counsel for failing to hire a voice recognition expert to counter the FBI agent's recognition of Petitioner's voice on an audiotape recording discussing marijuana trafficking. However, as correctly argued by Respondent, Petitioner fails to identify the witness, U.S. v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985), show that the witness was willing to testify, U.S. v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient to create a reasonable doubt as to guilt. Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990); see also United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not indicate what witness would have testified to and how such testimony would have changed the outcome of the trial, there can be no ineffective assistance of counsel). Speculation about what an expert could have said is not enough to establish prejudice. Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997). Therefore, the claim should be denied.

### D. Waiver of Petitioner's Right to be Present

In his final claim of ineffective assistance, Petitioner contends defense counsel wrongfully waived Petitioner's rights to be personally present should the jury request read-backs of testimony or request further instructions.

The Court has reviewed the relevant portion of the transcripts and finds Petitioner's claim to be without merit. Defense counsel consented to letting the jurors take their notebooks, instructions

and all evidence including transcripts of tape-recordings with them into the jury room. (3RT 665.)[5] Defense counsel also stipulated to the release of two alternate jurors. (3RT 666.) Finally, defense counsel stipulated to allowing the jury to be released at lunch, to be reconvened in the afternoon, and to be released at the end of the day. (3RT 669.) Defense counsel never waived Petitioner's right to be present during a request for read-back of testimony or further instruction. (3RT 665-669.) Accordingly, the claim should be denied.

### E. Conclusion

Petitioner has failed to demonstrate that the state court rejection of his claim was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim must be denied.

### F. Procedural Default

Respondent also contends that Petitioner's claim that defense counsel erroneously failed to call witnesses in support of his motion to suppress is procedurally defaulted, because the state courts rejected the claim as successive.[6]

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1989). This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its

---

[5] "3RT" refers to the Third Volume of the Reporter's Transcript on Appeal lodged with the Court on August 22, 2003.

[6] The Kern County Superior Court dismissed the claim citing In re Clark, 5 Cal.4th 750, 760, 21 Cal.Rptr.2d 509, 521 (1993). The 5th DCA and the California Supreme Court, by their "silent orders" denying review, are presumed to have denied the claims presented for the same reasons stated in the lower state court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). For California Supreme Court decisions, this means the Court must specifically have stated that it denied relief on a procedural ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1991). If the California Supreme Court denies a petitioner's claims without any comment or citation, the federal court must consider that it is a decision on the merits. Hunter v. Aispuro, 982 F.2d at 347-48.

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v. Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v. Kentucky, 466 U.S. 341, 348-51 (1984). The state procedural rule used must be clear, consistently applied, and well-established at the time of the petitioner's purported default. Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." LaCrosse v. Kernan, 244 F.3d 702, 704 (2001), *citing* Michigan v. Long, 463 U.S. 1032, 1040-41 (1983); Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996), *quoting* Coleman, 501 U.S. at 735 ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'") "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" Park, 202 F.3d at 1152, *quoting* Ake v. Oklahoma, 470 U.S. 68, 75 (1985). "[U]nless the state court makes clear that it is resting its decision denying relief on an independent and adequate state ground, it is presumed that the state denial was based at least in part upon federal grounds, and the petitioner may seek relief in federal court.'" LaCrosse, 244 F.3d at 704.

To be deemed adequate, the state law ground for decision must be well-established and consistently applied. Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly

1  followed' at the time it was applied by the state court."), *quoting* Ford v. Georgia, 498 U.S. 411, 424,
2  (1991).
3        In Clark, the California Supreme Court set forth the California rule barring successive
4  presentations of previously denied claims. In re Clark, 5 Cal.4th 750, 760, 21 Cal.Rptr.2d 509, 521
5  (1993). The court held that to entertain the merits of a successive petition would be inconsistent
6  with the its recognition that the delayed and repetitious presentation of claims is an abuse of the writ.
7  Id. The Kern County Superior Court's rejection of Petitioner's claim did not invoke federal law. As
8  such, it is independent of federal law. See In re Robbins, 18 Cal.4th 770, 811 (1998); Coleman, 501
9  U.S. at 736. Respondent also argues the state procedural bar is adequate to support the judgment, and
10 Petitioner has not demonstrate otherwise.
11       Because the procedural bar invoked by the Kern County Superior Court is independent of
12 federal law and adequate to support the judgment, "federal habeas review is barred unless the
13 prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that
14 the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v.
15 Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750, 111 S.Ct. 2456; Park, 202
16 F.3d at 1150. Petitioner has not given any reason to excuse his default. And as shown in this Court's
17 review of the merits of Petitioner's claim, Petitioner has not demonstrated a fundamental miscarriage
18 of justice should the Court refuse to consider the claim. Accordingly, the claim is not only without
19 merit; it is also procedurally defaulted.

**RECOMMENDATION**

21       Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas
22 corpus be DENIED and the Clerk of Court be DIRECTED to enter judgment.
23       These Findings and Recommendations are submitted to the Honorable Anthony W. Ishii,
24 United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and
25 Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of
26 California.
27       Within thirty (30) days after being served with a copy, any party may file written objections
28 with the court and serve a copy on all parties. Such a document should be captioned "Objections to

1  Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and
2  filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.
3  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The
4  parties are advised that failure to file objections within the specified time may waive the right to
5  appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
6  IT IS SO ORDERED.
7  **Dated:    June 7, 2005**             /s/ Lawrence J. O'Neill
   b9ed48                                 UNITED STATES MAGISTRATE JUDGE